/s/ John D. Minton
 Chief Justice

John Jackson ROBBINS, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 2009–CA–002178–MR, 2010–CA–001969–MR.

Court of Appeals of Kentucky.

Jan. 27, 2012.

Case Ordered Published by Court of Appeals March 30, 2012.

Jeffrey M. Blum, Louisville, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Michael J. Marsch, Assistant Attorney General, Frankfort, KY, for Appellee.

Before CAPERTON, NICKELL, and WINE,[1] Judges.

## OPINION

WINE, Judge:

John Jackson Robbins, Jr. appeals from the October 19, 2009, and October 4, 2010, orders of the Jefferson Circuit Court. Those judgments denied his motions to set aside his plea, conviction, and sentence on his charges of wanton abuse or neglect of an adult; wanton exploitation of an adult over $300; theft by unlawful taking over $300; and persistent felony offender, second degree. We conclude that the trial court abused its discretion by denying the first motion without an evidentiary hearing. Hence, we reverse and remand for further proceedings for the matters raised in the first appeal. However, we affirm the trial court's denial of Robbins's second motion.

Robbins was the sole caretaker of his elderly mother, Harriet Robbins, for whom he also possessed power of attorney. On June 14, 2007, he was indicted on the following charges: one count of knowing abuse or neglect of an adult; one count of knowing exploitation of an adult over $300; one count of theft by unlawful taking over $300; and one count of persistent felony offender, second degree. On June 25, 2007, Robbins entered a plea of not guilty to all charges.

On September 11, 2007, Robbins filed a motion to withdraw his former plea of not guilty and enter a plea of guilty pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Commonwealth submitted an offer on Robbins's plea of guilty, which outlined the following facts of the case:

> In Jefferson County between February 6, 2006[,] and April 6, 2007, Defendant had assumed the role of caretaker for the victim Harriet Robbins (81 years old and physically and mentally disabled). During that time, Defendant financially exploited the victim by utilizing her funds for his own purposes by various bank withdrawals, issuing checks and cashing annuities, unlawfully taking $114,889.34. Also during this time, Defendant knowingly permitted the victim's medical condition to worsen without seeking appropriate care for her, leaving her with multiple sores on her legs and without utilities. Defendant was previously convicted of a felony and

1. Judge Thomas B. Wine authored this opinion prior to his retirement effective January 6, 2012. Release of the opinion was delayed by administrative handling.

release from service within (5) years prior to this offense.

Robbins's motion to withdraw his plea was heard by the trial court, and by order entered on September 21, 2007, the trial court accepted the plea of guilty to the following amended charges: one count of wanton abuse or neglect of an adult; one count of wanton exploitation of an adult over $300; one count of theft by unlawful taking over $300; and one count of persistent felony offender, second degree. On November 15, 2007, Robbins was sentenced in accordance with the Commonwealth's recommendation for a total of ten years' incarceration and restitution in the amount of $114,889.34.

On June 23, 2009, Robbins filed a motion to set aside his plea, conviction, and sentence, pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. The trial court denied his motion on October 19, 2009, and Robbins appealed.[2] Thereafter, on September 16, 2010, Robbins filed a second RCr 11.42 motion. That motion was denied in an order entered on October 4, 2010, in which the trial court found that Robbins's motion raised the same arguments of his prior RCr 11.42 motion. Robbins then filed his second appeal.[3] On November 22, 2010, this Court *sua sponte* ordered that both appeals be heard together.

■ In order to maintain an ineffective assistance of counsel claim, a movant must satisfy a two-part test showing that his counsel's performance was deficient and that the deficiency caused actual prejudice affecting the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky.1985). The burden falls on the movant to overcome a strong presumption that counsel's assistance was constitutionally sufficient. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Commonwealth v. Pelfrey*, 998 S.W.2d 460, 463 (Ky.1999). In cases involving a guilty plea, the movant must prove that his counsel's deficient performance so seriously affected the outcome of the plea process that, but for counsel's errors, there is a reasonable probability that the movant would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Phon v. Commonwealth*, 51 S.W.3d 456, 459–60 (Ky.App.2001). An evidentiary hearing is necessary only where the record does not conclusively refute the allegations in the motion. *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky.2001).

■ Accordingly, our analysis must begin with the question of whether the trial court should have conducted an evidentiary hearing to determine the voluntariness of Robbins's guilty plea. "This is because the effect of a valid plea of guilty is to waive all defenses other than that the indictment charges no offense." *Commonwealth v. Elza*, 284 S.W.3d 118, 121 (Ky. 2009); *see also Quarles v. Commonwealth*, 456 S.W.2d 693, 694 (Ky.1970). "[T]he voluntariness of a guilty plea 'can be determined only by considering all of the relevant circumstances surrounding it.'" *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky.2002), quoting *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

In denying the RCr 11.42 motion, the trial court relied almost exclusively on Robbins's guilty plea colloquy, during which he stated that his guilty plea was "freely, knowingly, intelligently and volun-

---

2. Appeal No. 2009–CA–002178–MR.

3. Appeal No. 2010–CA–001969–MR.

tarily made," that he understood the charges against him and the defenses, and that he was satisfied with the performance of his counsel. We agree with the Commonwealth that the guilty plea proceedings fully complied with the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). But while such pronouncements in open court raise a strong presumption that counsel's assistance was constitutionally sufficient, that presumption may be overcome. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

 "The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Sparks v. Commonwealth*, 721 S.W.2d 726, 727 (Ky. App.1986). Furthermore, counsel has a duty to conduct a reasonable investigation, including defenses to the charges. *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

> A reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct. The investigation must be reasonable under all the circumstances.

*Haight v. Commonwealth*, 41 S.W.3d 436, 446 (Ky.2001) (internal citations omitted); *overruled on other grounds in Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009). The focus of the inquiry must be on whether trial counsel's decision not to pursue evidence or defenses was objectively reasonable under all the circumstances. *Wiggins*, 539 U.S. at 523, 123 S.Ct. at 2535. Matters involving trial strategy, such as the decision to call a witness or not, generally will not be second-guessed by hindsight. *Moore v. Commonwealth*, 983 S.W.2d 479, 484 (Ky.1998).

██ In its October 19, 2009, order, the trial court found that no evidentiary hearing was necessary concluding that:

> The record is apparent that arguments were made by previous counsel that reflect that proper investigation on behalf of the Defendant and documents given to the sentencing Court that reflected an orchestrated effort to gain the Defendant's release.

However, the record does not support this conclusion. Robbins complains that he pleaded on the advice of counsel but was never given the opportunity to review the evidence against him. The record reflects that Robbins pleaded guilty only three months after he was indicted on the offenses. Although the trial court had issued pretrial orders for discovery and Bill of Particulars, the Commonwealth had not provided any of the required discovery when Robbins entered his guilty plea.

Robbins avers that trial counsel told him there were 1,600 pages of discovery which would implicate him in criminal activity. That information was not provided until after the judgment of conviction was entered. Robbins now claims the bulk of the information contained on compact discs (CD's) were banking records for the joint account maintained by him and his mother. Additionally there were medical records from a local hospital which would have detailed the nature of illness. It would have been impossible for Robbins to evaluate the soundness of counsel's advice without access to that information. Without an evidentiary hearing, it is not possible to evaluate the effectiveness of trial counsel's representation.

Moreover, we are concerned that the Commonwealth's theory of guilt was based on a standard not authorized by the statute. Chapter 209 of the Kentucky Revised Statutes was enacted to protect the elderly

citizens of this Commonwealth. Section 209.090 sets out the legislative intent:

> The General Assembly of the Commonwealth of Kentucky recognizes that some adults of the Commonwealth are unable to manage their own affairs or to protect themselves from abuse, neglect, or exploitation. Often such persons cannot find others able or willing to render assistance. The General Assembly intends, through this chapter, to establish a system of protective services designed to fill this need and to assure their availability to all adults. It is also the intent of the General Assembly to authorize only the least possible restriction on the exercise of personal and civil rights consistent with the person's needs for services, and to require that due process be followed in imposing such restrictions.

Definitions for the statute are set out in KRS 209.020 including the following:

> (8) "Abuse" means the infliction of injury, sexual abuse, unreasonable confinement, intimidation, or punishment that results in physical pain or injury, including mental injury;
>
> (9) "Exploitation" means obtaining or using another person's resources, including but not limited to funds, assets, or property, by deception, intimidation, or similar means, with the intent to deprive the person of those resources;
>
> . . .
>
> (16) "Neglect" means a situation in which an adult is unable to perform or obtain for himself or herself the goods or services that are necessary to maintain his or her health or welfare, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult[.]

The abuse/neglect charge was based on the police officer's observations that Harriet Robbins's legs were swollen and blistered. However, Harriett informed medical personnel that the condition was hereditary and was not caused by any neglect by her son. The hospital confirmed her account. Furthermore, Harriett provided a statement that she had intentionally refused to seek medical attention for the condition because it was not painful and she generally distrusted doctors. There was no evidence that Harriett was incompetent to make such a decision.

Nevertheless, the Commonwealth took the position that Robbins had a duty to compel Harriett to seek medical treatment because she had given him authority as her healthcare surrogate. But under the statute, the surrogate's authority to make such decisions applies where the patient's physician has determined that she lacks capacity to make health-care choices. KRS 311.631(1). Robbins's counsel never challenged the Commonwealth's assertion that Robbins was required to obtain medical treatment for his mother notwithstanding her apparent competence to make such decisions for herself. Trial counsel admitted that he decided not to speak with Mrs. Robbins even though she attempted to contact him. Considering the significance of this defense, we find that there is an issue of fact whether trial counsel reasonably advised Robbins to accept the guilty plea.[4]

Likewise, the economic exploitation and theft charges were based on the Common-

---

4. It is of interest that while in the hospital in early December 2006, it was believed Mrs. Robbins was competent enough to sign a new durable Power of Attorney and Living Will Directive, drafted by a local attorney, appointing the ministerial staff at a local church to assume the responsibilities previously exercised by Robbins, as well as consent to treatment forms. (Discovery, Disc. II, Bates stamp pages 909–916).

wealth's allegations that Robbins had used his mother's assets for his own benefit. However, the Commonwealth never disputed the fact that Harriet had consented to Robbins's withdrawals from her bank account. Indeed, the Commonwealth admitted that Harriet had given her son a valid power of attorney to manage her affairs. Rather, the Commonwealth maintained that Harriet's consent was irrelevant to the charged offenses. A plain reading of the statute refutes this interpretation. Refusing to consider Mrs. Robbins's consent precluded Robbins from asserting co-ownership, which could have been decisive in the presentation of a successful defense. *Johnson v. Commonwealth*, 231 S.W.3d 800 (Ky.App.2007).

While we recognize that this issue goes to the sufficiency of the evidence supporting the charge, it also implicates the reasonableness of counsel's advice to plead guilty. If counsel's advice was based on a failure to fully investigate the evidence supporting the charges and the defenses to the charges, then counsel's advice was deficient. Furthermore, given the questionable factual and legal support for the charges, we find a reasonable implication that Robbins would not have pleaded guilty but for counsel's deficient advice. In any event, we conclude that Robbins is entitled to an evidentiary hearing on these issues.

However, we agree with the trial court that Robbins's second RCr 11.42 motion was barred as successive. RCr 11.42(3); *Lycans v. Commonwealth*, 511 S.W.2d 232 (Ky.1974). Therefore, the appeal from the denial of that motion must be affirmed. But since that motion merely restated the issues presented in his first motion, Robbins will be entitled to raise those issues during the evidentiary hearing on remand.

Accordingly, the October 19, 2009 order of the Jefferson Circuit Court denying Robbins's RCr 11.42 motion is reversed and this matter is remanded for an evidentiary hearing in accord with this opinion. The October 4, 2010 order of the Jefferson Circuit Court denying Robbins's successive motion is affirmed.

NICKELL, Judge, Concurs.

CAPERTON, Judge, dissents but does Not file a separate opinion.